WATSON, Judge.
Plaintiff, North Central Utilities, Inc., has appealed from a trial court judgment dismissing its claims against defendants, Norris and Richard Sarver, d/b/a Sarver Industries, (hereafter “the Sarvers”), for alleged breach of a construction contract.
North Central undertook to build a sewer system in an Alexandria subdivision known as Quail Creek Estates for the Sarvers. North Central contends that the contract required the Sarvers to transfer the completed sewer and water facilities to North Central’s subcontractor, H & H Sewer Systems, Inc., and that the Sarvers breached the contract by transferring the facilities to the City of Alexandria instead. The contract price was $196,926.69, and the Sarvers retained $19,692.67. North Central asked damages and the retainage. The Sarvers reconvened against North Central and filed a third party demand against H & H.
The trial court concluded that there was no agreement for transfer of the utility systems to H & H and that North Central had not carried the burden of proving that payment of the retainage was due. Judgment was rendered rejecting the demands of North Central and the reconventional and third party demands of Sarver Industries.
A second suit, H & H Sewer Systems, Inc. v. Richard A. Sarver, et al., La.App., 366 So.2d 972, in which a separate opinion has been rendered this date, was consolidated for trial and appeal. In that suit, H & H asked specific performance; that is, delivery of the sewer and water systems or, alternatively, damages. The Sarvers filed a third party demand against North Central and North Central reconvened against the Sarvers. In La.App., 366 So.2d 972, the trial court dismissed the suit of H & H and the third party demands of the Sar-vers.[1]
*970 North Central has appealed in both suits, and the Sarvers have answered the appeals, asking that the judgments be affirmed or, in the alternative, asking for a credit or offset. North Central contends on appeal that the trial court erred in failing to award damages for the Sarvers’ failure to transfer the sewer and water facilities of Quail Creek Subdivision to H & H; and that the trial court erred in finding that North Central was not entitled to the retainage of $19,692.67.
The issue on appeal is whether there is manifest error in the trial court’s decision, which is largely based on an evaluation of the credibility of the various parties.
It was stipulated that North Central bid on the sewer system and entered into a contract with the Sarvers for its construction; that the contract price was $196,-926.69, which was paid with the exception of retainage of $19,692.67; that H & H was the true party at interest in the agreement and North Central was to receive 11% of the price to make the bid because H & H was unable to secure bonding; that H & H entered into a separate contract with the Sarvers for construction of the water system for Quail Creek; and that all but $5,754.26 was paid on the water system contract. It was further stipulated that demand for transfer of the water and sewer systems to H & H was made by both North Central and H & H, but the Sarvers failed to make the transfer. It was also stipulated that the mortgage holder, First Federal Savings & Loan Association, had foreclosed on the Quail Creek project, which is no longer owned by the Sarvers; that the Sar-vers do not own the water and sewer systems; and that other bids on the Quail Creek sewer system were as follows:
Roland Construction Company $381,763.60
Bud Construction Company $394,692.00
Hooter Brothers Company $393,115.00
Courtney Construction Company $415,742.30
It was stipulated that these bids did not include any provision about ownership of the sewer and water systems.
The main source of contention is certain handwritten language noted on the bid submitted by North Central for construction of the sewer system, as follows:
“Contract and proposal is based on H & H Sewer Systems, Jonesville, La. becoming owner and operator of Sewer & Water Facilities and becomes part of this contract. Bobby L. Lawrence.”
Bobby L. Lawrence is president of North Central. The contract form itself is signed by Richard Sarver on behalf of Sarver Industries and by Lawrence on behalf of North Central and does not include the above language. This language is also not contained in the water system contract between the Sarvers and H & H. (Joint Exhibit # 3).
Louis J. Daigre Associates were consulting engineers for the sewer project. Larry O’Hearn Matthews, an employee of Daigre, was project engineer. Matthews testified that the 10% retainage was withheld because sewer project construction stopped and the certificate of acceptance was never filed.
Kenneth Hudnall, a utility contractor and utility operator associated with H & H, testified that a mutual friend told him the Sarvers were having trouble getting acceptable bids for Quail Creek’s sewer and water systems. Hudnall contacted the Sarvers about building those systems and advised them that he was licensed by the State of Louisiana to operate utilities. H & H entered into a negotiated contract for construction of the water and sewer systems. This first contract called for construction of both systems for a total price of about $243,528.63. (TR. 158). Hudnall testified that his actual cost on the project was $330,000 and he had intended to make up the difference through ownership of the water and sewer systems. The sewer con *971 tract was later voided because of inability to work out bonding and North Central undertook the contract on behalf of H & H. Some doubt is cast on Hudnall’s testimony by Exhibit Sarver-2, which was signed by Hudnall on behalf of H & H Sewer Systems, Inc., by Richard Sarver, and by the Alexandria Utility Commissioner. It provides that:
“. . such facilities [water distribution] shall become unconditionally the singular property of the City of Alexandria for the use and benefit of Council, and by these presents DEVELOPER-CUSTOMER has GRANTED, SOLD AND CONVEYED and does hereby GRANT, SELL AND CONVEY unto the City of Alexandria for the use and benefit of the City of Alexandria, its successor and assigns, all rights, title, and interest in an (sic) to said water mains, fire hydrants and appurtenances hereinabove identified or which may hereafter be installed to provide water service within the said property, to the end that full ownership and control of all water mains, fire hydrants, and appurtenances that serve the said subdivision or property of DEVELOPER-CUSTOMER, shall be vested forever in the City of Alexandria for the use and benefit of the Water Department, City of Alexandria, and City Council of the City of Alexandria, its successors, and assigns. As a consideration therefore, Council obligates itself to render water service through all such facilities and to perform all maintenance and replacement requirements in accordance with the ‘ “Regulations” ’ and Ordinances of the City of Alexandria.” (Sarver-2, p. 8).
Hudnall identified his signature on this document but did not recall signing the instrument. Hudnall admitted that Louis (Jake) Daigre of the engineering firm had told him he might have difficulty in trying to own and operate the sewer and water systems.
Bobby Lawrence of North Central testified that he was unaware of the existence of Sarver-2 prior to its introduction into evidence. He would not have given permission for Hudnall to execute Sarver-2 had he been aware of it. It is difficult to determine from the testimony the nature of North Central’s interest in the transfer to H & H. It is clear that there were various credits and transactions between North Central and H & H; they had worked together on other projects. Lawrence testified that, as guarantor on the sewer contract, he was interested in H & H receiving the added consideration of the water and sewer systems but his pecuniary interest is not otherwise specified.
Richard Sarver testified that he had never had any objection to H & H owning the water and sewer systems for Quail Creek as long as H & H could do so consistent with various government guidelines and regulations. However, he did not consider the transfer a condition of the contracts.
Under all the circumstances, as outlined above, the trial court correctly found that the parties did not have a meeting of the minds about the eventual disposition of the water and sewer systems. Hud-nall’s execution of the agreement transferring the water system to the City of Alexandria would constitute a waiver of any claim by H & H to the water system. It is clear from the evidence that the water and sewer systems were regarded as one entity. Execution of the transfer to the City by Hudnall on behalf of H & H and by Richard Sarver shows that the parties did not intend ownership of the sewer and water systems to be additional consideration in the contracts for their construction.
North Central did not carry its burden of proving entitlement to the additional sum claimed under the contract for construction of the sewer system. H & H has not appealed from the judgment dismissing its claims, which is final as to H & H.
The answers to the appeals ask only alternative relief if the judgments below are reversed or amended and need not be considered in view of our disposition of the appeals.
For the foregoing reasons, the judgment of the trial court herein is affirmed at the cost of the plaintiff-appellant, North Central Utilities, Inc.
AFFIRMED.

. The judgment makes no disposition of North Central’s reconventional demand against the Sarvers. The demands urged in that pleading are identical with those urged by North Central *970 against the Sarvers in our docket No. 6757 (trial docket No. 93,305). The judgment in No. 93,305 (our No. 6767) effectively disposes of the reconventional demand in trial docket No. 93,414 (our No. 6758). No issue has been made of the technical omission and a remand would be pointless.